IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRASSCORP, D/B/A CLIPLIGHT MANUFACTURING COMPANY | § § § | PLAINTIFF/COUNTER-DEFENDANT |
| v. | § § | CAUSE NO. 1:02CV84 |
| HIGHSIDE CHEMICALS, INC. | § | DEFENDANT/COUNTER-PLAINTIFF |

MEMORANDUM OPINION AND ORDER REGARDING
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

THE MATTERS BEFORE THE COURT are the Motion for Summary Judgment [154] and the Motion for Summary Judgment for the Spoilation of the Evidence [156] filed by Defendant Highside Chemicals, Inc. ("Highside"). Plaintiff Brasscorp, d/b/a Cliplight Manufacturing Company ("Cliplight") has filed responses, and Highside has filed replies. After due consideration of the submissions and the relevant law, it is the Court's opinion that some questions of material fact exist which must be resolved by the jury. Accordingly, the Motion for Summary Judgment [154] will be granted in part and denied in part, and the Motion for Summary Judgment for the Spoilation of the Evidence [156] will be denied.

DISCUSSION

**Facts:**

Plaintiff Cliplight is an automotive specialty manufacturer and distributor. It developed a "Flushworks Machine" for use by automotive service providers. Operating the Flushworks Machine required a flushing fluid, which Cliplight obtained from Defendant Highside. Highside is a blender of chemical products, including the fluid at issue in this case, Super Flush.

Cliplight alleges that before it decided to use Super Flush, Highside conducted compatibility tests and advised Cliplight that Super Flush caused a slight swelling of the Machine

component parts made of Viton, but did not degrade the Viton.  Further, Highside advised Cliplight that the slight swelling was beneficial to the operation of the Machine because it caused the "O" rings to seal better.  Highside concluded that its Super Flush and Cliplight's Flushworks Machine were compatible and advised Cliplight of this conclusion.

After purchasing Super Flush and including it in packages with its Flushworks Machine, Cliplight alleges it began receiving complaints about Machine leaks and failures.  Cliplight conducted its own tests on the compatibility of the Flushworks Machine and Super Flush.  Cliplight alleges that Super Flush caused excessive swelling in the Viton Machine components, and this excessive swelling was the sole cause of the reported leaks and failures.  Cliplight alleges resultant business losses and makes the following claims against Highside: Negligent misrepresentation, negligence, fraudulent misrepresentation, breach of express warranty, breach of implied warranty of merchantability and breach of implied warranty of fitness for particular purpose.

Highside has counterclaimed against Cliplight.  According to Highside, it never tested Super Flush with the Flushworks Machine.  Highside alleges it soaked some of the pump assembly parts made of Viton in Super Flush for several weeks and recorded swelling up to 20%, and operated another pump assembly with Super Flush for three weeks.  Highside alleges it provided 109 gallons of Super Flush to Cliplight for testing and an unspecified number of gallons to Ford at Cliplight's request for testing.  Highside denies that it made any representations to Cliplight about the compatibility of Super Flush and the Flushworks Machine.  Highside complains that when Cliplight received faulty check valves from the field and sent out retrofit kits, they failed to keep any of the faulty valves.  The valves are therefore unavailable for inspection or testing.  Highside seeks a declaratory judgment on indemnification, and asserts

claims of breach of contract, breach of good faith and fair dealing, negligence, negligent misrepresentation and fraudulent misrepresentation.

**The Motions for Summary Judgment:**

Highside moves for summary judgment as to all of Cliplight's tort and warranty claims against it. In addition, Highside seeks summary judgment on the basis of its contention that Cliplight destroyed all of the faulty check valves returned by Flushworks Machine customers, and therefore no one will be able to determine if those valves failed because of compatibility reasons or for some other reason. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

    A. Cliplight's Tort Claims

Highside asserts that the Mississippi Product Liability Act ("MPLA"), MISS. CODE § 11-1-63, precludes Cliplight's claims of negligent misrepresentation, negligence, and fraudulent misrepresentation because Cliplight has defined the scope of its damages in terms of economic losses - the costs of repairing Flushworks, sending out retrofit kits, loss of sales and loss of profits. Highside argues that the MPLA governs actions seeking commercial, economic loss damages, *Hininger v. Case Corp.,* 23 F.3d 124, 126 (5th Cir. 1994), and the economic loss doctrine limits pursuit of these damages to a breach of warranty theory. *Mississippi Chemical Corp v. Dresser-Rand Co.*, 287 F.3d 359, 364 (5th Cir. 2002).

In response, Cliplight argues that the economic loss doctrine applies only to products liability claims, and it has not asserted products liability claims against Highside. Cliplight contends that it has not alleged that Super Flush is defective; rather, Cliplight alleges that

Highside negligently conducted compatibility testing and fraudulently and/or negligently misrepresented the compatibility of Super Flush with the Flushworks Machine.

The Court agrees that Cliplight's tort claims are not in the nature of products liability claims.  MISS. CODE § 11-1-63 excepts from its application "any action for ... commercial damage to the product itself."  Cliplight's claims are not for damages caused by a product, e.g., damage caused by the Flushworks Machine.  Cliplight's claims are for damage to the Flushworks Machine itself, resulting in economic losses.  Therefore, Cliplight's tort claims are not precluded by the MPLA.

For the same reason, the economic loss doctrine is inapplicable, as it has been held to apply only to products liability cases . *Lyndon Property Ins. Co. v. Duke Levy and Associates, LLC*,  475 F.3d 268, 274 (5th Cir. 2007).  Thus, Highside has failed to show that it is entitled to judgment as a matter of law as to the tort claims asserted against it, and its Motion for Summary Judgment on these grounds will be denied.

  B. Cliplight's Warranty Claims

Highside next asserts that Cliplight fails to satisfy the essential elements of each of its warranty claims.  The parties agree that the Uniform Commercial Code applies to their transactions, MISS. CODE § 75-2-101, *et seq.*

   1. Breach of Express Warranty

Highside argues that Cliplight cannot show that Highside breached an express warranty as defined in MISS. CODE § 75-2-313 because Highside never made an express warranty.[1]  Highside

---

[1] MISS. CODE § 75-2-313 provides:

(1) Express warranties by the seller are created as follows:
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the

points to a provision in the Super Flush Material Safety Data Sheet ("MSDS") which states:

> WHILE HIGHSIDE CHEMICALS INC. BELIEVES THE DATA SET FORTH HEREIN ARE ACCURATE AS OF THE DATE HEREOF, HIGHSIDE CHEMICALS, INC. MAKES NO WARRANTY WITH RESPECT THERETO AND EXPRESSLY DISCLAIMS ALL LIABILITY FOR RELIANCE THEREON. SUCH DATA ARE OFFERED SOLELY FOR YOUR CONSIDERATION, INVESTIGATION, AND VERIFICATION.

Attachment 6 to docket entry 232, pg. 25. According to Highside, this provision is a disclaimer of any express warranty regarding Super Flush. However, the MSDS data to which this disclaimer applies does not appear to have any relevance to the issue of the compatibility of Super Flush and the Flushworks machine or Viton. It is difficult to discern how a provision disclaiming all liability for reliance on the data in the MSDS would also affect data not contained in the MSDS. The Court therefore agrees with Cliplight's contention that Highside's representation that Super Flush was compatible with the Flushworks Machine, after testing the pump portion of the Machine and Super Flush together, may have created an express warranty under MISS. CODE § 75-2-313. *R. Clinton Const. Co. v. Bryant & Reaves, Inc.*, 442 F.Supp. 838, 845 (N.D. Miss. 1977). The jury could conclude that Highside knew the purpose for which Cliplight intended to use Super Flush, and Highside's representation of compatibility was an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," thereby creating "an express warranty that the goods shall conform to the affirmation or promise." MISS. CODE § 75-2-313(1)(a). Therefore, Cliplight has shown that there is a question of material fact as to whether there was an express warranty

---

description.
    (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

created, and whether that warranty was breached.  *See, e.g., Taylor v. Ward*, 393 So.2d 1342 (Miss. 1981).  The Motion for Summary Judgment will therefore be denied as to breach of express warranty.

        2.        Breach of Implied Warranty of Merchantability

Miss Code § 75-2-314 imposes a non-disclaimable implied warranty of merchantability in a contract for sale "if the seller is a merchant with respect to goods of that kind."  *Id.*  There is no question that Highside is a merchant with respect to chemical blend fluids, and therefore the implied warranty of merchantability applies to the sale of Super Flush.  "To establish a breach of [the implied warranty of] merchantability, a plaintiff must prove the goods had a defect which caused plaintiff's damage."  *Farris v. Coleman Co., Inc.,* 121 F.Supp.2d 1014, 1017 (N.D.Miss. 2000).  Here, Cliplight acknowledges it has not alleged that Super Flush has a defect or is defective.  *See* Pl. Resp. to Def. Mtn for Summ. Judg., pg. 5.  However, citing comment 8 to U.C.C. § 2-314, Cliplight argues that one of the requirements of this U.C.C. section is that the goods be "honestly resalable," and Super Flush was not "honestly resalable" because of compatibility issues when combined with the Flushworks Machine.  Cliplight provides no authority for this theory, and applying it would require that the Court ignore Mississippi precedent requiring an actual defect in the product.  Because Cliplight does not allege that Super Flush is defective, the Court concludes that Highside has shown it is entitled to judgment as a matter of law as to Cliplight's claim of breach of the implied warranty of merchantability.  Summary judgment will be granted as to this claim.

        3.        Breach of Implied Warranty of Fitness for a Particular Purpose

Miss. Code § 75-2-315 imposes an implied warranty of fitness for a particular purpose "where the seller has any reason to know the particular purpose for which the goods are to be

used and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." *Id.* As noted earlier, the jury could conclude from the evidence submitted that Highside was aware of the particular purpose to which Cliplight intended to put Super Flush. Furthermore, the parties disagree about whether Cliplight actually relied on the Highside's "skill or judgment" in selecting Super Flush. According to the deposition testimony of Cliplight's Jack Brass, Highside's William Dyle informed him after testing that the Viton component had "swelled slightly, but that was good because it gives you a better seal." Def. Exh. 2, pg. 223. Brass further testified that Cliplight "relied on our supplier to tell us what [Super Flush] would do with - with compatibility. We trusted our supplier. We trusted his knowledge. We trusted that he had the capabilities to tell us. . . . In terms of compatibility, we trusted Highside 100 per cent." Def. Exh. 2, pgs. 225-26.

Highside argues that William Dyle only speculated that the swelling would make a better seal, and merely stated he did not know if the pump would work with Super Flush beyond the warranty period. Def. Memo in Sup. Resp. to Mtn Summ. Judg., pgs. 17-18. However, although Highside cites only to its pleadings in support of this argument. As the moving party, Highside bears the initial burden of establishing, by competent summary judgment evidence, that no issue of material fact exists. *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). Highside points to no competent summary judgment evidence controverting the deposition testimony of Jack Brass. The Court therefore concludes that Highside has failed to meet its burden of showing the absence of evidence to support Cliplight's claim of breach of implied warranty of fitness for a particular purpose. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The summary judgment motion will therefore be denied as to this issue.

    C.    Spoilation of Evidence

In 2001, Cliplight responded to complaints about leaking Flushworks Machines by sending all of its customers a retrofit kit consisting of "the pump, check valves, hoses and installation instructions." Def. Exh. 2, pg. 294; Def. Exh. 41, pg. 27. Customers were requested to return the old check valves. Def. Exh. 38. Cliplight personnel placed the "O" rings from these returned check valves in a box, and then discarded them. Def. Exh. 3, pg. 169-72. The responsible employee indicated the parts were discarded as a routine matter: "[I]f it's not good, part no good, we throw out." Def. Exh. 6, pg. 83. Highside contends that the absence of the old check valves makes it impossible for Cliplight to show causation, and therefore Highside is entitled to judgment as a matter of law on all of Cliplight's claims as a sanction for the alleged spoilation.

In response, Cliplight contends that Highside does in fact have two of the old check valves. One, received from a Flushworks customer, is in the possession of Wendell Hull & Associates, a consulting firm hired by Highside. Pl. Resp. in Opp. to Mot. Summ. Judg. for Spoilation, Exh. 4. Wendell Hull & Associates has not performed any testing or analysis of the check valve. Def. Exh. 3, pg. 328. The other was received directly from Cliplight by a representative of Mt. Hawley Insurance Company on behalf of Highside. Def. Exh. 2, pg. 275.

The law in the Fifth Circuit requires much more than what has been shown here in order to consider summary judgment as a sanction for spoilation. *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) ("An adverse inference based on the destruction of potential evidence is predicated on the 'bad conduct' of the defendant."). A court in this district determined that a plaintiff in similar circumstances would not even be entitled to an adverse inference, "much less to summary judgment," without proof that the defendant intentionally discarded the evidence. *Stahl v. Wal-Mart Stores, Inc.*, 47 F.Supp.2d 783, 786 (S.D. Miss. 1998). Furthermore, it is not

clear to what extent Cliplight will be prejudiced by the spoilation of evidence if it has two of the faulty check valves in its possession.  In light of the lack of evidence of bad faith, and the contradictory evidence of the number and usefulness of the available check valves, the Court concludes that Cliplight has failed to show that it is entitled to judgment as a matter of law.  Summary judgment on the basis of spoilation of the evidence will therefore be denied.  This issue may be fully developed at trial and if necessary, an appropriate remedy fashioned at that time.  *Stahl v. Wal-Mart Stores, Inc.*, 47 F.Supp.2d at 788, n. 7.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [154] filed by Defendant Highside Chemicals, Inc. is **GRANTED** as to Cliplight's claim of breach of implied warranty of merchantability against Highside, and **DENIED** in all other respects.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary Judgment for the Spoilation of the Evidence [156] filed by Defendant Highside Chemicals, Inc. is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 7th day of June, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE